UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| **DONALD LINDER,** | ) |
| | ) |
| Plaintiff, | ) CASE NO. _____ |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,** | ) |
| | ) |
| Defendant. | ) |

COMES NOW, Plaintiff, Dr. Donald Linder, and for his Complaint against the Hartford Life and Accident Insurance Company states:

1. This is a civil action seeking damages against the Hartford Life and Accident Insurance Company for denying Plaintiff benefits of a life insurance policy that he was rightfully entitled to under a group insurance policy obtained via Plaintiff's employer.

1.

**JURISDICTIONAL FACTS**

2. Plaintiff Dr. Donald Linder is currently a resident of Marion, Linn County, Iowa.

3. Defendant Hartford Life and Accident Insurance Company ("The Hartford") is a corporation established under the Connecticut Business Corporation Act and whose principal place of business is located in Hartford, Connecticut.

4. Defendant is a business entity that does business in the Northern District of Iowa.

1

5. The Dependent Group Life insurance policy at issue in this case was funded and administered by the Defendant.

6. The Court has jurisdiction to hear Linder's claim pursuant to 28 U.S.C. § 1331, as Linder's claims arise under the laws of the United States of America.

7. Additionally, jurisdiction in this Court is proper under 28 U.S.C. § 1132(e), as that provision grants federal courts exclusive jurisdiction over claims brought under subchapter I of the Employee Retirement Income Security Program (ERISA).

8. Venue in this Court is proper under 28 U.S.C. § 1391(b) and Local Rule 3(b) because the events or omissions giving rise to this claim occurred in Linn County, Iowa.

9. Additionally, under ERISA, venue is proper "in the district where the plan is administered" or "where the breach took place." 29 U.S.C. § 1132(e)(2).

10. The Dependent Group Life Insurance policy at issue here was administered at East Central Iowa Acute Care, LLP which is located in Cedar Rapids, Iowa in the Northern District of Iowa.

**FACTUAL ALLEGATIONS**

11. Dr. Linder has been a covered beneficiary under a Dependent Group Life Insurance policy (the "Policy") issued by The Harford, through BRL HR Consulting LLC and Dr. Linder's employment at East Central Iowa Acute Care, LLP, at all times relevant to this action.

12. Dr. Linder was in a domestic partnership with Mr. Neil Boudreaux from 1997 until Mr. Boudreaux's death on July 1, 2022.

2

13. Dr. Linder and Mr. Boudreaux lived together, were listed as spouses at their local County Club, shared a joint bank account, and Mr. Boudreaux listed Dr. Linder as his life partner in his Last Will and Testament.

14. On July 8, 2018, Dr. Linder submitted a Benefits Enrollment Form to The Hartford in which Dr. Linder identified Mr. Boudreaux as his domestic partner and applied for $30,000 in life insurance coverage for Mr. Boudreaux.

15. Dr. Linder was told by representatives of The Hartford that he did not have to be married to qualify for a Dependent Group Life Insurance Policy.

16. The Hartford's Benefits Enrollment Form did not request or require that Dr. Linder provide proof of domestic partnership as part of the enrollment process.

17. In August 2018, Dr. Linder obtained the Policy on Mr. Boudreaux's life with himself as beneficiary from The Hartford.

18. Dr. Linder paid monthly premiums on the Policy until Mr. Boudreaux's death.

19. On July 1, 2022 Mr. Boudreaux died.

20. Dr. Linder listed Mr. Boudreaux as his domestic partner on the enrollment form when obtaining the Policy.

21. The Policy defines dependents as including a spouse or children.

22. The Policy defines spouse to include a domestic partner provided the policyholder has:

> executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners or parties to a civil union for purposes of The Policy; or … have registered as domestic partners or parties to a civil union with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.

3

23. The State of Iowa does not have or maintain a domestic partnership registry.

24. The Hartford did not request an affidavit of partnership from Dr. Linder nor from Mr. Boudreaux prior to Mr. Boudreaux's death.

25. The Hartford did not provide an example of a satisfactory domestic partner affidavit at the time of enrollment for Dr. Linder and Mr. Boudreaux to use as a reference.

26. Dr. Linder was not asked for further documentation of his partnership or he would have provided said documentation.

27. Dr. Linder paid his first's month premium of $16.50 in September 2018 and continued to pay this monthly premium at all relevant times.

28. Dr. Linder did not intend to pay premiums on an insurance Policy for Mr. Boudreaux's that would not have paid out upon Mr. Boudreaux's death.

29. Dr. Linder relied on the information provided at the time of enrollment and Defendant's acceptance of his premiums to reasonably believe he had an effective insurance policy for Mr. Boudreaux's death.

30. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

31. Defendant funds the Policy Benefits.

32. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

33. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's abuse of discretion.

4

34. Further, in order for the Plan Administrator's decisions to be reviewed by the Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the plan.

35. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the plan.

36. On September 12 and October 25, 2022, after Mr. Boudreaux had passed away, The Hartford sent letters to Dr. Linder requesting additional information regarding Mr. Boudreaux's status as Dr. Linder's spouse.

37. Dr. Linder responded on November 2 and explained that Iowa does not have a domestic partnership registry, and that Mr. Boudreaux's recent death rendered it impossible for both Mr. Boudreaux and Dr. Linder to attest to a domestic partner affidavit.

38. In that letter, Dr. Linder informed The Hartford that he was never asked for an affidavit to effectuate coverage or he would have provided one prior to Mr. Boudreaux's passing.

39. On December 7, 2022, The Hartford denied Dr. Linder's claim under the policy because he had not married to Mr. Boudreaux, he had not registered with a governmental domestic partnership registry as a civil union, and had not had Mr. Boudreaux complete an affidavit stating Dr. Linder was his partner.

40. Dr. Linder appealed the The Hartford's decision by sending a letter to the Group Claim Appeal Unit, as instructed in the December 7 letter.

41. Dr. Linder received a letter on December 19, 2022 again denying his claim and confirming he had exhausted his administrative remedies.

42. On April 28, 2023, Dr. Linder, through counsel sent another letter requesting The Hartford reconsider its position and provided The Hartford with evidence demonstrating that Dr. Linder and Mr. Boudreaux lived together, that they were listed as spouses at their local County Club, that they shared a joint bank account, and that Mr. Boudreaux listed Dr. Linder as his life partner in his Last Will and Testament.

43. On May 8, 2023, The Hartford again denied Dr. Linder the benefits.

44. Dr. Linder has exhausted his administrative remedies so his claim is ripe for judicial review.

## COUNT I
## WRONGFUL DENIAL OF BENEFITS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

45. Plaintiff Dr. Donald Linder hereby repleads the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. Under the terms of the Plan, Mr. Bourdreax was a covered spouse.

47. The Hartford never communicated to Dr. Linder when he applied for, received, or paid premiums on the Policy that The Hartford did not consider Mr. Boudreaux to be a "spouse" under the Policy.

48. To the contrary, The Hartford's actions in issuing the Policy and accepting Dr. Linder's premium payments for said Policy led Dr. Linder to reasonably believe that The Hartford considered Mr. Boudreaux to be a "spouse" under the Policy.

49. Dr. Linder made a claim for benefits for his covered spouse, Mr. Boudreaux.

50. Defendant denied Dr. Linder's claim.

51. Dr. Linder exhausted The Hartford's administrative appeal process.

52. Dr. Linder is entitled to benefits because, as his domestic partner, Mr. Boudreaux qualifies under the Policy's definition of "spouse."

53. The Hartford's denial of Dr. Linder's claim is wrongful, arbitrary, capricious, and violates the terms of the Policy.

54. The Hartford has acted in bad faith by allowing Dr. Linder to pay premiums on the Policy but then denying him the benefits from the Policy following Mr. Boudreaux's death.

55. Dr. Linder is entitled to recover reasonable attorney's fees and costs related to this action. 29 U.S.C. § 1132(g)(1).

WHEREFORE, Plaintiff Donald Linder respectfully requests that this Court award him judgment against The Hartford, including compensatory and punitive damages in an amount to determined at trial, costs and attorney's fees, and for any other relief the Court deems necessary.

## COUNT II
## BREACH OF FIDUCIARY DUTY UNDER ERISA

56. Plaintiff Dr. Donald Linder hereby repleads the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

51. Defendant is a fiduciary of the Policy.

52. Dr. Linder reasonably relied upon The Hartford's representations, actions (and lack of the same) when he applied for, received, and paid premiums for the Policy at issue here.

53. Likewise, Dr. Linder relied upon The Hartford for The Hartford to alert Dr. Linder to potential problems or issues with Dr. Linder's application for the Policy, both at the time he applied for the Policy and after The Hartford issued the Policy to him.

7

54. Defendant breached its fiduciary duties to Dr. Linder when it:

   a) Took no steps to verify Mr. Boudreaux's eligibility for coverage at or near the time of enrollment;

   b) Accepted Dr. Linder's application for life insurance benefits pertaining to Mr. Boudreax's life;

   c) Failed to exercise skill, prudence, and judgment in discovering whether Mr. Boudreaux was eligible for coverage; and

   d) accepted Dr. Linder's monthly premium payments since 2018 but then denied coverage for Mr. Boudreaux's death.

55. Defendant should be estopped from claiming that no coverage exists for Mr. Boudreaux's death when it accepted premiums and did not verify Mr. Boudreaux's eligibility.

56. The Policy should be reformed to cover Mr. Boudreaux and reflect Dr. Linder's reasonable expectations.

57. Dr. Linder suffered damage because of Defendant's breach of its fiduciary duties.

58. Dr. Linder is entitled to recover reasonable attorney's fees and costs related to this action. 29 U.S.C. § 1132(g)(1).

59. The Hartford has acted in bad faith by allowing Dr. Linder to pay premiums on the Policy but then denying him the benefits from the Policy following Mr. Boudreaux's death.

WHEREFORE, Plaintiff Donald Linder respectfully requests that this Court award him judgment against The Hartford, including compensatory and punitive damages in an

amount to determined at trial, costs and attorney's fees, and for any other relief the Court deems necessary.

/s/ Samuel E. Jones
SAMUEL E. JONES    AT0009821
SHUTTLEWORTH & INGERSOLL, PLC
115 3rd Street SE, Suite 500
PO Box 2107
Cedar Rapids, IA 52406-2107
Phone:    319-365-9461
Fax:    319-365-8443
E-mail:    sej@shuttelworthlaw.com
ATTORNEYS FOR PLAINTIFF